**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**____________________DIVISION**

JeBryant J. Hudson )
)
)
Plaintiff(s), )
)
v. ) Case No. 4:26-cv-01595-JSD
(to be assigned by Clerk of District Court)
Aramark Services, Inc. and Sedgwick Claims Management Services, Inc )
)
) JURY TRIAL DEMANDED
)
) YES ☑ NO ☐
Defendant(s). (Enter above the full name(s) of all defendants in this lawsuit. Please attach additional sheets if necessary.) )

**EMPLOYMENT DISCRIMINATION COMPLAINT**

1. This employment discrimination lawsuit is based on (check only those that apply):

✔ Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*, for employment discrimination on the basis of race, color, religion, gender, or national origin.
**NOTE**: *In order to bring suit in federal district court under Title VII, you must first obtain a right-to-sue letter from the Equal Employment Opportunity Commission.*

✔ Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, *et seq.*, for employment discrimination on the basis of age (age 40 or older).
**NOTE**: *In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file charges with the Equal Employment Opportunity Commission.*

✔ Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101, *et seq.*, for employment discrimination on the basis of disability.
**NOTE**: *In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a right-to-sue letter from the Equal Employment Opportunity Commission.*

____ Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701, *et seq.*, for employment discrimination on the basis of a disability by an employer which constitutes a program or activity receiving federal financial assistance.
**NOTE**: *In order to bring suit in federal district court under the Rehabilitation Act of 1973, you must first file charges with the appropriate Equal Employment Office representative or agency.*

✔ Other (Describe)

Supplemental state law claims for employment discrimination and retaliation under the Missouri Human Rights Act (MHRA), § 213.010 R.S.Mo. et seq.

## PARTIES

2. Plaintiff's name: JeBryant Hudson

Plaintiff's address: 722 Aventura Way
Street address or P.O. Box

St Peters, St. Charles County, MO 63376
City/ County/ State/Zip Code

314-532-5876
Area code and telephone number

3. Defendant's name: Aramark Services, Inc. (See Attached Sheet for Defendant 2).

Defendant's address: c/o C T Corporation System
120 S Central Ave
Street address or P.O. Box

Clayton, MO 63105
City/County/State/ Zip Code

(248) 639-1418
Area code and telephone number

**NOTE: IF THERE ARE ADDITIONAL PLAINTIFFS OR DEFENDANTS, PLEASE PROVIDE THEIR NAMES, ADDRESSES AND TELEPHONE NUMBERS ON A SEPARATE SHEET OF PAPER.**



**Please see additional page for additional defendant**

ATTACHMENT TO SECTION 3: ADDITIONAL DEFENDANTS

DEFENDANT 2:
Name: Sedgwick Claims Management Services, Inc.

Mailing Address (Corporate Legal Intake):

c/o C T Corporation System
120 S Central Ave
Clayton, MO 63105

Area Code and Telephone Number:
855-560-4048

4. If you are claiming that the discriminatory conduct occurred at a different location, please provide the following information:

| 1500 East Highway A | Wentzville | Missouri | 63385 |
|---|---|---|---|
| (Street Address) | (City/County) | (State) | (Zip Code) |

5. When did the discrimination occur? Please give the date or time period:

Earliest: May 7, 2026 | Latest: Continuing Action to Present

## ADMINISTRATIVE PROCEDURES

6. Did you file a charge of discrimination against the defendant(s) with the Missouri Commission on Human Rights?

☑ Yes Date filed: 07/27/2026

☐ No

7. Did you file a charge of discrimination against the defendant(s) with the Equal Employment Opportunity Commission or other federal agency?

☑ Yes Date filed: 07/27/2026

☐ No

8. Have you received a Notice of Right-to-Sue Letter?

☑ Yes ☐ No

If yes, please attach a copy of the letter to this complaint.

9. If you are claiming age discrimination, check one of the following:

_____ 60 days or more have passed since I filed my charge of age discrimination with the Equal Employment Opportunity Commission.

✔ fewer than 60 days have passed since I filed my charge of age discrimination with the Equal Employment Opportunity Commission.

## NATURE OF THE CASE

10. The conduct complained of in this lawsuit involves (check only those that apply):

- [ ] failure to hire me
- [x] termination of my employment
- [ ] failure to promote me
- [x] failure to accommodate my disability
- [x] terms and conditions of my employment differ from those of similar employees
- [x] retaliation
- [x] harassment
- [x] other conduct (specify):

Unlawful benefit interference, duress-driven corporate record spoliation, intentional wireless server blackouts, and the bad-faith financial lockout of contractually guaranteed short-term disability wage continuation benefits under ERISA Section 502(a)(1)(B).

Did you complain about this same conduct in your charge of discrimination?

- [x] Yes
- [ ] No

11. I believe that I was discriminated against because of my (check all that apply):

- ____ race
- ____ religion
- ____ national origin
- ____ color
- ✔ gender
- ✔ disability
- ✔ age (birth year is: 1988)
- ____ other:

Did you state the same reason(s) in your charge of discrimination?

☑ Yes ☐ No

12. State here, as briefly and clearly as possible, the essential facts of your claim. Describe specifically the conduct that you believe is discriminatory and describe how each defendant is involved in the conduct. Take time to organize your statement; you may use numbered paragraphs if you find it helpful. It is not necessary to make legal arguments, or to cite cases or statutes.

"SEE ATTACHED EXTENDED SHEETS FOR SECTION 12 STATEMENT OF CLAIM."

(Continue to page 6, if additional space is needed.)

# ATTACHMENT TO QUESTION 12: STATEMENT OF CLAIM

## I. PARTIES AND NATURE OF EMPLOYMENT

1. Plaintiff JeBryant J. Hudson was hired by Defendant Aramark Services, Inc. ("Aramark") on or around February 23, 2026, as a Maintenance Supervisor assigned to the manufacturing floor of the General Motors Wentzville assembly plant.
2. From his date of hire until on or around June 19, 2026, Plaintiff's immediate direct supervisor was Maintenance Manager Ricky Fountain; following Fountain's resignation, General Manager Jauwalynne "Jay" Ayuso assumed direct managerial oversight.
3. Defendant Sedgwick Claims Management Services, Inc. ("Sedgwick") acted as the Third-Party Administrator ("TPA") responsible for administering short-term disability and medical leave benefits under Aramark's self-funded Salaried Benefits Plan No. 501.

## II. PROTECTED WORKPLACE REPORTING AND MANAGEMENT OBSTRUCTION

4. On or around April 13, 2026, Plaintiff filed a formal internal compliance report with Aramark management detailing systemic operational insubordination, equipment hoarding, and intentional work avoidance by floor personnel.
5. On or around May 13, 2026, Plaintiff executed his mandatory supervisory duties by transmitting a formal harassment report to Aramark site management regarding severe workplace misconduct, which included the weaponization of an offensive, targeted homophobic slur on or around May 7, 2026, and explicit, vulgar verbal assaults regarding management on or around May 12, 2026.
6. When Plaintiff explicitly reported that he was severely offended by this targeted vulgarity, Maintenance Manager Ricky Fountain actively minimized the hostile environment and dismissed the complaint, stating that Plaintiff was "the only one offended".
7. While Plaintiff's report resulted in a temporary 3-day corporate suspension for the harasser, Plaintiff formally notified Aramark site management and corporate HR in writing on or around May 14 and May 15, 2026, that he anticipated targeted, on-site floor retaliation for executing his reporting obligations.

## III. EMPLOYER RETALIATION, RECOERCION, AND RECORD TAMPERING

8. On or around May 19, 2026, rather than protecting Plaintiff from floor hostility, Maintenance Manager Ricky Fountain issued pretextual performance critiques and local management attempted to punitively strip Plaintiff of his regular 12-hour shift rotation.
9. On or around May 21, 2026, Plaintiff attempted to escalate the hostile site environment directly to corporate HR; General Manager Jay Ayuso actively intercepted the communication within three minutes, issuing a direct managerial command ordering Plaintiff to immediately stop escalating complaints outside of local site management.
10. On or around May 28, 2026, acting on outside floor friction regarding the documented internal complaints, General Manager Jay Ayuso and Manager Ricky Fountain cornered Plaintiff inside a closed facility office and forcibly compelled him under duress, intense intimidation, and fear of immediate termination to physically erase and scrub his civil rights retaliation statements from an official company intake record.
11. Local site leadership intentionally deployed administrative obstruction to target Plaintiff's pre-planned vacation time, subjecting his compliant, formal PTO requests (proactively submitted beginning on or around May 6, 2026) to an un-remedied administrative "pocket veto" that lasted over 70 days without approval or denial to increase structural pressure.

## IV. HOSTILE ENVIRONMENT, DISCRIMINATION, AND MEDICAL CRISIS

12. Driven by the ongoing, pervasive hostility, systemic floor sabotage, and management's targeted harassment, Plaintiff suffered a severe on-site medical emergency requiring immediate medical care and intervention on or around June 22, 2026.
13. On or around June 26, 2026, following automated medical leave notices, General Manager Jay Ayuso cornered Plaintiff for an aggressive medical interrogation, demanding private medical data.
14. On or around June 28, 2026, Plaintiff transmitted a formal compliance email to General Manager Jay Ayuso documenting a coordinated pattern of payroll fraud and targeted age-based harassment from floor workers who openly weaponized discriminatory put-downs, including remarking during a team meeting that they "had sons older than [Plaintiff] and were old enough to be [Plaintiff's] father".
15. Floor personnel further entered the facility office to mockingly taunt Plaintiff regarding his ongoing medical crisis.

16. On or around July 2 and July 7, 2026, local site leadership committed severe medical privacy breaches by improperly leaking Plaintiff's confidential medical leave timeline to unauthorized peer supervisors.
17. On or around July 7, 2026, General Manager Jay Ayuso responded in writing by explicitly refusing to intervene, abdicated his safety obligations, and instructed Plaintiff to personally police the hostile environment alone.
18. On or around June 28 and June 29, 2026, General Manager Jay Ayuso weaponized operational abandonment by intentionally ignoring multiple emergency staffing communications, trapping Plaintiff on the manufacturing floor to extract a grueling, unsafe 15.5-hour shift under extreme physical duress to induce a constructive discharge.

## V. RETALIATORY SERVER LOCKOUT AND CONFLICTS OF INTEREST

19. On or around June 21, 2026, General Manager Jay Ayuso transmitted a direct text message explicitly commanding Plaintiff to maintain his corporate cellular device and remain available 24/7 to answer business calls even during his regularly scheduled days off.
20. On or around July 9, 2026, at 5:00 PM, Plaintiff transmitted a factual compliance email to HR Representative Crystal Marcotullio exposing these medical privacy violations and management's pretextual leave narratives.
21. Exactly eleven minutes later, at 5:11 PM, General Manager Jay Ayuso executed an immediate, retaliatory corporate wireless server lockout under IT Service Request #9592676, explicitly commanding network operations to: *"Turn Off all services and lock phone. Restrict phone completely please."*
22. This technical lockout was approved by District Manager Sherman Adams, deliberately weaponizing the previously mandated 24/7 connectivity expectation to cut off Plaintiff's access to benefits support systems, sever his communication with HR, and construct a fraudulent "job abandonment" defense while Plaintiff operated under active medical restriction.

## VI. TPAS AND FIDUCIARY WAGE OBSTRUCTION

23. On or around July 10, 2026, at 10:12 AM, Defendant Sedgwick entered a log into the client portal stating that Plaintiff's claim was active and in pending status, and that if Plaintiff was not ready to return to work they would continue on with the claim as is.
24. Operating under this directive, Defendant Sedgwick permanently locked Plaintiff's master profile status as **"Current Work Status: OFF WORK"** to insulate the employer from liability, while simultaneously halting financial payouts under the false pretext of full recovery.
25. On or around July 23, 2026, Sedgwick Senior Lead Stephanie Howieson stated in writing via the portal: *"In addition, we are coordinating with your employer regarding the specific exclusions that were discussed previously."* On or around July 29, 2026, she added: *"...we have engaged your employer in further discussions and are awaiting guidance."*
26. On or around July 30, 2026, Defendant Sedgwick rendered an adverse financial Claim Determination denying Plaintiff's disability benefit extension past August 5, 2026. However, Sedgwick's own database records track that Plaintiff's primary psychiatric medical evidence from *Talkiatry* was not processed or indexed as "Received" until on or around August 7, 2026, thereby making a denial decision days before reviewing the primary evidence.
27. On or around August 5, 2026, at 7:22 AM, Defendant Sedgwick logged a deadline requiring ongoing notes for extensions to be submitted by August 25, 2026.
28. Despite establishing August 25 as the submission deadline, Defendant Sedgwick cut off funding prematurely on or around August 11, 2026. To justify the retroactive freeze, Sedgwick logged at 10:30 PM that the doctor's examination showed improvement.
29. This entry stripped generic checkbox phrases out of secondary counseling notes from on or around July 28 and August 4 and misattributed them to Plaintiff's primary psychiatrist to forge a false recovery narrative, completely ignoring the primary psychiatrist's direct clinical certification of severe cognitive deficits, speech latency, and major depressive disorder.

## VII. REJECTION OF DOCUMENTATION AND FAILURE TO EXAMINE

30. On or around August 17, 2026, at 11:41 AM, Plaintiff submitted a portal request for the specific scientific or medical metrics used to deny his extension under the Summary Plan Description (SPD). The Sedgwick supervisor evaded disclosure by replying verbatim: *"hello, I'm sorry, i don't understand the question?"*
31. On or around August 18, 2026, at 12:05 PM, the Sedgwick supervisor logged a command stating that they would not accept an off-work slip or revised attending physician statement forms, directly contradicting the standard Proof of Claim rules codified in the plan contract.
32. While promoting video telehealth as a valid, funded mechanism to receive routine medical care in Aramark's official benefits enrollment guide, Defendants simultaneously invented an unwritten rule declaring video care invalid for documenting short-term disability claims, creating a barrier targeting psychiatric claimants.
33. Defendant Sedgwick's claims examiners bypassed internal guidelines requiring them to evaluate incoming files within 2 business days of receipt, freezing Plaintiff's files from on or around August 25 until issuing a blanket denial notice on or around August 28, 2026.
34. On or around August 18, 2026, Plaintiff transmitted a formal compliance audit directly to Patricia Leinheiser, Aramark's Head of Salaried Benefits, providing corporate leadership with clear notice of collusion and data manipulation. Aramark leadership maintained total silence and failed to intervene to stop the bad-faith freeze on Plaintiff's salary continuation.
35. On or around August 29, 2026, at 8:06 AM, Plaintiff transmitted a formal notice to Defendant Sedgwick stating that he was treating all administrative remedies under the plan as officially exhausted due to repeated processing violations and notification suppressions.

(Attach additional sheets as necessary).

13. The acts set forth in paragraph 12 of this complaint:

☑ are still being committed by the defendant.

☐ are no longer being committed by the defendant.

☐ may still be being committed by the defendant.

## REQUEST FOR RELIEF

State briefly and exactly what you want the Court to do for you. Make no legal arguments; cite no cases or statutes.

I request that the Court enter judgment against the Defendants and grant me the following relief:

1. Order the Defendants to pay me all back wages, supervisor salary, step-increases, and shift-premium pay that I lost as a direct result of their discrimination and retaliation.
2. Order the immediate restoration and payout of all my contractually guaranteed short-term disability and wage-continuation benefits that were wrongfully cut off and withheld.
3. Award me front pay and future lost earnings because the hostile work environment prevents me from safely returning to the facility.
4. Award me full compensatory damages for the severe emotional distress, mental anxiety, and clinical health breakdown caused by the corporate harassment, forced office coercion, and leave interference.
5. Issue an injunction ordering the Defendants to clear my employment profile of all pretextual performance critiques, correct their fraudulent internal database tracking records, and permanently stop executing retaliatory server lockouts that cut off my access to HR and benefits support.

6. Award me punitive damages to punish the Defendants for their malicious, bad-faith behavior, along with reimbursement for all my out-of-pocket court costs and litigation expenses.

14. Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 1st day of October, 2026.

Signature of Plaintiff ____________________